842 P.2d 309

**Sigmund KOVACHY, III, and Joyce L. Kovachy, husband and wife, Plaintiffs–Respondents,**

v.

**Dennis DeLEUSOMME and Jane Doe DeLeusomme, husband and wife, Defendants–Appellants.**

No. 19505.

Court of Appeals of Idaho.

Oct. 26, 1992.

Petition for Review Denied Dec. 30, 1992.

Everett D. Hofmeister, Coeur d'Alene, for appellants.

Jenkins & Leggett, Coeur d'Alene, for respondents. Janet E. Jenkins argued.

SILAK, Judge.

Dennis DeLeusomme appeals the district court's decision denying his motion to vacate a default judgment. DeLeusomme argues that his failure to pick up his mail, which contained a certified notice required by I.R.C.P. 11(b)(3), coupled with the fact that he was misled by ongoing settlement negotiation, constituted excusable neglect under I.R.C.P. 60(b). The district court found that his conduct did not constitute excusable neglect. We reverse and remand.

Sigmund and Joyce Kovachy ("Kovachy") sued DeLeusomme for breach of contract over a land partnership agreement. Kovachy was granted a preliminary injunction on January 10, 1991, which halted the sale of the disputed land or equipment. Following the injunction efforts were made by the parties to settle the dispute. The settlement negotiations continued up to the day before default was entered on June 28. During this time, on May 6, 1991, DeLeusomme's attorney moved to withdraw; the motion was granted. The notice of withdrawal required under Rule 11(b)(3) was mailed by certified letter on May 21. DeLeusomme failed to respond and the order for DeLeusomme's default was entered June 14. The default judgment was entered on June 28. On July 19, DeLeusomme's new counsel filed a motion with the district court to vacate the judgment based upon I.R.C.P. 55(c) and 60(b). The district court held a hearing at which testimony was taken, and on August 5 it denied DeLeusomme's motion to vacate the judgment. This appeal followed.

■ The decision to grant a motion to set aside a default judgment is committed to the discretion of the trial court. Accordingly,

[w]hen we review, on appeal, the trial court's application of law to the facts found, we will consider whether appropriate criteria were applied and whether the result is one that logically follows. Thus, if (a) the trial court makes findings of fact which are not clearly erroneous, (b) the court applies to those facts the proper criteria under Rule 60(b)(1) (tempered by the policy favoring relief in doubtful cases), and (c) the trial court's decision follows logically from application of such criteria to the facts found, then the court will be deemed to have acted within its sound discretion.

*Shelton v. Diamond International Corp.,* 108 Idaho 935, 938, 703 P.2d 699, 672 (1985) (citing *Avondale on Hayden, Inc. v. Hall,* 104 Idaho 321, 326, 658 P.2d 992, 997 (Ct. App.1983)). *See generally Sun Valley Shopping Center, Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Determining whether to set aside a default judgment requires an appellate court to "apply a standard of liberality rather than strictness and give the party moving to vacate the default the benefit of a genuine doubt." *Johnson v. Pioneer Title Co.,* 104 Idaho 727, 733, 662 P.2d 1171, 1177 (Ct. App.1983). The criteria for relief under Rule 60(b)(1) includes "mistake, inadvertence, surprise, or excusable neglect." "Excusable neglect is conduct that might be expected of a reasonably prudent person under the same circumstances." *Nickels v. Durbano,* 118 Idaho 198, 200–01, 795 P.2d 903, 905–06 (Ct.App.1990). In addition, "the party seeking relief from a judgment must show ... due diligence in the prosecution of his rights." *Avondale,* 104 Idaho at 325, 658 P.2d at 996. This diligence is a requirement to establish reasonably prudent conduct. *Baldwin v. Baldwin,* 114 Idaho 525, 528, 757 P.2d 1244, 1247 (Ct. App.1988).

■ DeLeusomme argues that the default should be vacated because he was unaware that he had to enter an appearance after his attorney withdrew. He claims as excuse the fact that he customari-

ly goes to the post office approximately once every two weeks to pick up his mail and that he returned to the post office during business hours to get the certified letter (the Rule 11(b)(3) notice) once he received the notice from the post office, however, by this time the certified letter had been returned unclaimed. In finding that DeLeusomme's actions were not excusable, the district court reasoned that because service by mail was permitted and actual receipt was not necessary, failure to pick up mail, "whether it was habit" or not, does not "rise to the level of excusable neglect. It's not excusable to do, to ignore one's mail, especially during the conduct of a lawsuit." While the district court was correct when it stated that a person may not "shut his eyes or ears to information" and then claim he lacked notice, *Rodell v. Nelson*, 113 Idaho 945, 947, 750 P.2d 966, 968 (Ct.App.1988), the facts here do not support a finding that DeLeusomme refused service as in *Rodell*.

A narrow view of these facts may indicate a lack of diligence warranting a default. However, this alone is not sufficient, because we must consider each case on all of its unique facts. *See Baldwin*, 114 Idaho at 527, 757 P.2d at 1246. A fact *Baldwin* instructs us to look at is the diligence with which a party proceeds to set aside the default. *Id.* at 528, 757 P.2d at 1247. DeLeusomme argues that he diligently filed his motion within twenty-two days of the entry of default. This is comparable to the twelve days in *Baldwin*. *Id.* at 527, 757 P.2d at 1246. We therefore conclude that DeLeusomme was diligent in moving to set aside the default, particularly in view of the fact that DeLeusomme obtained new counsel.

To further support reversal, DeLeusomme argues that a letter from Kovachy dated June 27, 1991, was purposefully misleading. This argument goes to the Rule 60(b)(1) criteria of "surprise." The letter was dated one day before the entry of the default judgment and contained a statement to the effect that Kovachy was willing to negotiate. Three days after Kovachy's attorney obtained the order of default against DeLeusomme, Kovachy mailed the following letter to DeLeusomme:

Dear Dennis,

I was wondering if you received my last letter because I did not hear from you. Hopefully we can get together Sunday 6–23 to talk.

Please drop me a note to let me know what you would like to do.

Buddy

Kovachy said nothing in this letter about default being entered, and he expressed hope that the parties would be able to "get together Sunday 6–23 to talk." Kovachy's letter does not say what he wanted to talk about, but the implication is clear: either Kovachy was extending his willingness to negotiate or he deliberately sought to mislead DeLeusomme into thinking this was the case.

On June 27, 1991, nearly two weeks after he obtained the order of default, Kovachy mailed the following letter to DeLeusomme:

Dear Dennis,

I've been thinking about what you had to say Sunday. I feel communication is necessary if we are to ever resolve this. But when it comes to actual offers, I would like them to be in writing. So if you would like to start actual negotiations please feel free to submit a reasonable offer in writing.

I won't be able to get together with you as planned, but look forward to hearing from you.

Buddy

The letter was postmarked "June 27 PM 1991," but the next day Kovachy appeared in court, with his attorney, and testified for the purpose of obtaining a default judgment against DeLeusomme.

At the hearing on the motion to set aside the default, Kovachy gave no reasonable explanation for his letter. However, in response to a question by the court, Kovachy indicated that he did not want to reveal to DeLeusomme that "unless he came up with a valid legitimate offer of settlement that we were pursuing Default Judgment against him." Intended as misleading or

not, the letter would lead any reasonable person to believe that Kovachy was continuing negotiations and actively soliciting a written offer of settlement from DeLeusomme. The letter also shows that the parties had talked on "Sunday," presumably June 23. The language "please feel free to submit a reasonable offer in writing" hardly suggests that Kovachy was abandoning negotiation. The solicitation of a written offer implies that a reasonable time is allowed for response unless, by notice, the solicitation is withdrawn. The letter reveals that another "get together" was planned, but Kovachy does not disclose why he wouldn't "be able to get together with you as planned." It is undisputed that Kovachy at no time gave any indication that negotiations were terminated.

The district court noted in its findings that although Kovachy's actions could be characterized as "underhanded," Kovachy was under no obligation to give notice to DeLeusomme. The court went on to find that even though settlement negotiations made the case "very close" the fact that DeLeusomme did not pick up his mail was determinative.

■ DeLeusomme urges this Court to overrule the district court because defaults are not favored and this is a "close case" which warrants reversal, citing *Schraufnagel v. Quinowski*, 113 Idaho 753, 747 P.2d 775 (Ct.App.1987), *disapproved on other grounds, Golay v. Loomis*, 118 Idaho 387, 393, 797 P.2d 95, 101 (1990). The general rule in doubtful cases is to grant relief from the default in order to reach a judgment on the merits. The fact that DeLeusomme could have acted more prudently by picking up his mail more regularly does not compel the conclusion that relief should be denied. *Full Circle, Inc. v. Schelling*, 108 Idaho 634, 637, 701 P.2d 254, 257 (Ct.App.1985). This is particularly true where DeLeusomme was led to believe that settlement negotiations were continuing and the district court found that it was a close case.

Because we agree with the district court that this is a "close case" with genuine doubt, we apply the rule favoring relief in doubtful cases, and hold that the district court abused its discretion in refusing to set aside the default judgment.[1] Therefore, we reverse the order of the district court denying DeLeusomme's motion to set aside the default judgment, vacate the judgment, and remand this case for further proceedings. No attorney fees on appeal. Costs to appellants.

WALTERS, C.J., and SWANSTROM, J., concur.

---

**1.** DeLeusomme also poses two other arguments: (1) that the damage award was excessive, and (2) that the Rule 11(b)(3) notice was legally defective. We need not, however, address these issues because of our reversal and vacation of the judgment.